**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| LYNDA THOMPSON, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:20-CV-602-SDJ-CAN |
| v. | § | |
| | § | |
| GAINESVILLE HOUSING AUTHORITY, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Gainesville Housing Authority and J.L. Henderson's Motion to Dismiss [Dkt. 22]. After reviewing the Motion to Dismiss, Plaintiff's Response [Dkt. 24], Defendants' Reply [Dkts. 25; 26], and all other relevant filings, the Court recommends the Motion to Dismiss be **GRANTED** and Plaintiff's claims against Defendants Gainesville Housing Authority and J.L. Henderson be dismissed, as set forth herein.

**BACKGROUND**

*Procedural History*

On August 7, 2020, Plaintiff Lynda Thompson ("Plaintiff") filed her Complaint – the live pleading – against Defendants Gainesville Housing Authority ("GHA") and J.L. Henderson ("Henderson"), in his official capacity as Executive Director of the Gainesville Housing Authority (collectively, "Defendants") [Dkt. 1].[1] On April 29, 2021, this matter was referred to the

---

[1] Plaintiff's Response makes clear she asserts claims against Henderson only in his official, and not his individual capacity.

undersigned for pretrial proceedings [Dkt. 8].  On June 1, 2021, Defendants filed their answer [Dkt. 10].[2]

***Factual Background – Plaintiff's Section 8 Termination by GHA***

Plaintiff resides in Gainesville, Texas, and was a participant there in the Section 8 Housing Choice Voucher Program ("Section 8 Program").  GHA is the local public housing agency that operates the Section 8 Program of the U.S. Department of Housing and Urban Development ("HUD") in Gainesville [Dkts. 1 at 3; 10 at 2].[3]  Henderson is GHA's Executive Director and was the Executive Director at the time of Plaintiff's termination from the Section 8 Program.  GHA is governed by a Board of Commissioners, which has five members.[4]

On October 19, 2018, Plaintiff was admitted to GHA's Section 8 Program, and she received rental assistance from GHA through October 31, 2019, the effective date of termination of her Section 8 voucher [Dkts. 1 at 4; 10 at 3].  GHA notified Plaintiff by letter dated September 26, 2019, and signed by Amber Sandoval, that her voucher would be terminated effective October 31, 2019, stating the reason for termination as: "Due to a 3rd degree felony charge and conviction" ("Notice of Termination") [Dkts. 1 at 4-5; 1-2].  On or around October 1, 2019, Plaintiff requested a hearing to appeal the termination [Dkt. 1 at 6].  GHA notified Plaintiff on October 4, 2019, by letter signed by the GHA Office Manager, that GHA scheduled her hearing for October 22, 2019, and it directed her to "[p]lease bring any documentation or information you feel would be pertinent

---

[2] Plaintiff did not amend her complaint or make any other filings thereafter in response to the answer (or any of the defenses asserted therein) [*See* Dkt. 10 at 10-12].

[3] The Section 8 Program provides affordable housing assistance, funded by HUD and administered by public housing authorities.  24 C.F.R. § 982.1(a)(1) ("[i]n the HUD Housing Choice Voucher (HCV) program, HUD pays rental subsidies so eligible families can afford decent, safe, and sanitary housing. The HCV program is generally administered by State or local governmental entities called public housing agencies (PHAs). HUD provides housing assistance funds to the PHA. HUD also provides funds for PHA administration of the program.").

[4] Gainesville Housing Authority, *About Gainesville Housing Authority*,
http://www.gainesvilletxhousingauthority.com/about/about-gainesville-housing-authority (last visited May 17, 2022).

for this hearing" ("Notice of Hearing") [Dkts. 1 at 6; 1-3]. Henderson was the hearing officer at the October 22, 2019 hearing [Dkt. 1 at 7]. Plaintiff pleads "[i]t is unclear what evidence Defendant GHA introduced at the hearing and what if any opportunity Ms. Thompson had to review this evidence prior to the hearing," though she admits she "was given more facts about the alleged criminal misconduct at the hearing" [Dkt. 1 at 7]. On the same day as the hearing, October 22, 2019, GHA sent Plaintiff a letter, signed by Henderson, stating that, "[p]ursuant to your hearing with me today, I have reviewed your file and find that the Gainesville Housing Authority Crime Policy will not allow your continued housing assistance. Therefore, your housing assistance will be terminated effective 10/31/19" ("Termination Decision") [Dkt. 1-4]. Plaintiff contends that she "noted at the hearing and in all prior and subsequent conversations with GHA and J.L. Henderson that the alleged criminal misconduct occurred during a period when she was not well and experiencing mental health issues" [Dkt. 1 at 7]. Plaintiff claims GHA was aware she is disabled and that her sole source of income is Social Security benefits [Dkt. 1 at 7]. GHA allegedly "did not respond to [Plaintiff's] reasonable accommodation request in writing or otherwise," even though Plaintiff "submitted a request in writing asking GHA to consider her mental health and lack of treatment at the time the criminal conduct occurred" on several occasions [Dkt. 1 at 8].[5] On November 5, 2019, Plaintiff submitted an additional request with the assistance of Legal Aid NorthWest Texas; to date, GHA "has not responded to any reasonable accommodation request and has not furnished the criminal record that was the basis for this termination" [Dkt. 1 at 8].

---

[5] Attached to Plaintiff's Complaint are the Notice of Termination, the Notice of Hearing, and the Termination Decision [Dkts. 1-2; 1-3; 1-4]. No other documents are attached to her Complaint.

*Plaintiff's Complaint – Summary of Claims*

Each of Plaintiff's claims arise out of GHA's termination of her Section 8 Program voucher.  Plaintiff specifically pleads fourteen "claims for relief," alleging as follows:

1. a claim under 42 U.S.C. § 1983 for failure to comply with federal law and guidelines "established by HUD through regulations and policy memoranda, in the administration of [GHA's] program," specifically 42 U.S.C. § 1437d(k) [Dkt. 1 at 14];
2. failure to provide a Notice of Termination with "sufficient information" such that she could prepare a defense or rebut the evidence of the criminal record at her hearing, in violation of 42 U.S.C. § 1437d(k) and 24 C.F.R. § 982.555(c)(2) [Dkt. 1 at 14-15];
3. Defendant GHA failed to give Plaintiff the opportunity to examine her criminal record and other documents before the hearing in violation of 24 C.F.R. § 982.555(e)(2) [Dkt. 1 at 15-16];
4. Defendants' actions violated 24 C.F.R. § 982.553(d)(2)-(3) and were "arbitrary and capricious," thus the hearing decision "should be reversed" [Dkt. 1 at 16-17];
5. Defendants' failure to provide sufficient information in the Notice of Termination to prepare a defense to the allegations violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments [Dkt. 1 at 17];
6. Defendants' "denial of assistance for past criminal record is inconsistent with the regulations as the Plaintiff was not an applicant but a recipient of the [Section 8] voucher subsidy," in violation of 24 C.F.R. § 982.553(a) [Dkt. 1 at 17-18];
7. The grounds for Plaintiff's termination violated HUD's Office of General Counsel Guidance on the Application of Fair Housing Act Standards to the Use of Criminal Records and Plaintiff's rights under the Americans with Disabilities Act ("ADA") and Fair Housing Act ("FHA") [Dkt. 1 at 18];
8. Plaintiff did not engage in drug-related criminal activity, violent criminal activity, or activity "which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents, persons residing in the immediate vicinity, property owner, management staff, or persons performing a contract administration function or responsibility on behalf of the GHA," and her termination was thus in violation of 24 C.F.R. § 982.553(a) [Dkt. 1 at 18-19];
9. Plaintiff did not engage in any drug-related activity, and her termination was thus in violation of 24 C.F.R. § 982.553(b) [Dkt. 1 at 19];
10. Defendants "did not consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of the Plaintiff, mitigating circumstances related to the disability of the applicant, or the effects of termination of assistance on the elderly disabled Plaintiff," in violation of 24 C.F.R. § 982.552(c)(2), and Defendants' actions were arbitrary and capricious and should be reversed [Dkt. 1 at 20];

11. Defendants' actions were in violation of obligations under 24 C.F.R. § 982.54(c) and were arbitrary and capricious and should be reversed [Dkt. 1 at 20-21];

12. Defendants failed to respond to and/or denied Plaintiff's "reasonable accommodation request" in violation of 24 C.F.R. § 100.204, the ADA, and the FHA [Dkt. 1 at 21];

13. Plaintiff seeks damages against Defendants GHA and Henderson [Dkt. 1 at 21-22]; and

14. Plaintiff seeks costs and reasonable attorney's fees for her claims under § 1983 and Texas Civil Practice and Remedies Code Chapter 38 [Dkt. 1 at 22].

In sum, Plaintiff alleges deprivation of her due process rights, violation of HUD's Section 8 regulations, and failure to reasonably accommodate Plaintiff's disability in violation of the ADA and FHA [Dkt. 1]. For relief, Plaintiff requests, in pertinent part, that the Court:

b) annul and reverse the determination and decision of the Defendants in terminating Plaintiff's participation in the Section 8 Program, as it is contrary to law, arbitrary and capricious, and was made without a preponderance of the evidence in violation of due process[;]

c) declare that:

1. Defendants must continue Plaintiff's participation in the Section 8 Program, and if necessary, reissue her voucher so that she may seek suitable housing anywhere in the United States;

2. Defendants' determination to terminate Plaintiff's Section 8 participation was incorrect as a matter of law;

3. Defendants acted under color of law and violated Plaintiff's federal Constitutional and statutory rights, and that such violation was willful, or made with callous, or reckless disregard for her rights;

d) order:

1. Defendants to continue Plaintiff's participation in the Section 8 Program and if necessary take all steps required to enable her to obtain affordable and decent housing anywhere in the United States with a section 8 subsidy;

2. Defendant GHA pay Plaintiff compensatory damages;

3. all Defendants pay Plaintiff costs and reasonable attorney fees

[Dkt. 1 at 23].

### *Defendants' Motion to Dismiss*

On January 21, 2022, Defendants filed the instant Motion to Dismiss seeking relief under Federal Rule of Civil Procedure 12 [Dkt. 22]. On February 11, 2022, Plaintiff filed her Response

[Dkt. 24].[6]  On February 16, 2022, Defendants filed a Reply [Dkt. 25], and on February 21, 2022, Defendants filed an Amended Reply [Dkt. 26].  Defendants urges dismissal of Plaintiff's § 1983 claims on the grounds that: (1) claims against Henderson in his official capacity are a suit against GHA, and thus are redundant and should be dismissed; and (2) Plaintiff has failed to state a § 1983 claim against GHA because "there is no required showing of an unconstitutional policy, practice or custom of the entity itself" that was the moving force of her injury and thus no basis for municipal liability exists [Dkt. 22 at 2-3].  Defendants further broadly urge that Plaintiff has failed to plead sufficient facts that would support any claim against Defendants, including any private cause of action for violation of HUD's Section 8 regulations and/or failure to reasonably accommodate Plaintiff's disability in violation of the ADA or FHA [Dkt. 22 at 3, 13].

### FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant.  FED. R. CIV. P. 12(b)(6).  The claims stated must include enough factual allegations "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[7]  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555.  Further, in determining whether to grant a motion to dismiss under Rule 12(b)(6), a court generally may not "go outside the complaint."

---

[6] Plaintiff's deadline to respond to the Motion to Dismiss was extended after Plaintiff failed to file any response whatsoever to the pending Motion to Dismiss [Dkt. 21].

[7] To assess the sufficiency of a complaint, the Court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief."  *Iqbal*, 556 U.S. at 681.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

*Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  A court may, however, consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

## ANALYSIS

### Plaintiff's Section 1983 Claims

Section 1983 provides a private cause of action against persons who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983; *see Thomas v. Dallas Hous. Auth.*, No. 3:14-CV-4530-B-BN, 2015 WL 2192785, at *4 (N.D. Tex. May 1, 2015).

#### Defendant Henderson – Official Capacity Claims Should Be Dismissed

As a preliminary matter, Defendants urge dismissal of Plaintiff's claims against Henderson in his official capacity is appropriate as they are redundant of the claims against GHA [Dkt. 22 at 3].  A judgment against a public servant in his official capacity imposes liability on the entity that he represents; thus, a plaintiff's suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent."  *Palo ex rel. Est. of Palo v. Dallas Cnty.*, No. 3:05-CV-0527-D, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)); *Edwards v. Hous. Auth. Texarkana*, No. 5:15CV36-JRG-CMC, 2015 WL 7184702, at *5 (E.D. Tex. Nov. 13, 2015) (citing Tex. Civ. Prac. & Rem. Code § 101.106(f)) ("If an employee of a governmental unit is sued for conduct within the general scope of that person's employment and the claim could have been brought against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.").  Because Plaintiff makes clear

that she asserts no individual capacity claims against Henderson, and states only a claim against Henderson in his official capacity as the Executive Director of GHA, her suit should be treated as one against GHA itself and the duplicative official capacity claims against Henderson should be dismissed. *See Foerster v. Bleess*, No. 4:20-CV-1782, 2020 WL 6588731, at \*5 (S.D. Tex. Oct. 16, 2020) (citations omitted) (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)) (dismissing § 1983 claim because the "[p]laintiff's claims against [employee] in his official capacity should be dismissed as redundant" where the plaintiff "is already bringing the same claims against the governmental entity."), *aff'd*, No. 20-20583, 2022 WL 38996 (5th Cir. Jan. 4, 2022); *Patterson v. Hous. Auth. of City of Pearsall*, No. CIVASA-05-CA-1155-XR, 2006 WL 2322887, at \*10 (W.D. Tex. July 27, 2006) (quoting *Kentucky v. Graham*, 473 U.S. 159, 171 (1985)) (finding when a plaintiff files suit against an entity and its employees in their official capacity under the same set of facts, the court properly dismisses the official-capacity claims as duplicative).[8]

---

[8] Plaintiff is barred from seeking damages or retrospective injunctive relief against Henderson in his official capacity because § 1983 does not authorize claims for money damages against officials as "arms of the state." *See Med RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 290-92 (5th Cir. 2015)) ("Plaintiff's § 1983 claims against DSHS and Cole in his official capacity are barred insofar as Plaintiff seeks economic damages or other retrospective relief."). Typically, official capacity claims under § 1983 are "thus limited to prospective injunctive and declaratory relief." *See Machete Prods.*, 809 F.3d at 288 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 71 n.10 (1989)). However, in the context of a *Monell* claim, an official-capacity claim for injunctive and declaratory relief is duplicative of claim for such relief from the municipality where, like here, Plaintiff seeks the same injunctive and declaratory relief from GHA as from Henderson. *See Cain v. City of New Orleans*, No. CV 15-4479, 2017 WL 467685, at \*15 (E.D. La. Feb. 3, 2017) (quoting *Kentucky*, 473 U.S. at 167 n.14) ("The equivalence between official-capacity and entity suits is further supported by the Supreme Court's statement that '[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government units can be sued directly for damages and injunctive or declaratory relief.'"); *see also Gibson v. Langston*, No. 6:10CV136, 2011 WL 42897, at \*6 (E.D. Tex. Jan. 6, 2011) (citing *Kentucky*, 473 U.S. at 165-67) (explaining that an official capacity claim duplicates the same required showing to reach the same relief, since "[i]n order to obtain injunctive relief from the state or state officials acting in their official capacities, a plaintiff must prove a deprivation of his constitutional rights pursuant to an official state policy."). Because the Court finds GHA not liable, explained *supra*, any official-capacity claim against Henderson for declaratory and prospective injunctive relief must also be dismissed. *See Chacon v. Hous. Auth. of City of El Paso*, No. EP-99-CA-410-DB, 2000 WL 33348200, at \*5 (W.D. Tex. Oct. 31, 2000) ("Having already decided to dismiss Plaintiff's claims against the Housing Authority, are those claims thereby dismissed against Alvarado in his official capacity as well? . . . . the Court is of the opinion that Alvarado cannot be liable in his official capacity without the Housing Authority also being liable.").

*Defendant GHA – Municipal Liability*

The Court now turns to the *Monell* municipal liability claim.  Under Section 1983, municipalities and other such governmental units are considered "persons" subject to liability. *Monell*, 436 U.S. at 691 (local government entities are persons subject to suit under Section 1983); *De La O v. Hous. Auth. of the City of El Paso*, 417 F.3d 495, 503 (5th Cir. 2005) (claims against a municipal housing authority are treated as claims against municipality itself).[9]  The Parties disagree regarding the applicability of *Monell* (and its accompanying analysis) to GHA.  Plaintiff asserts without reference to any authority that GHA "is not a municipality" [Dkt. 24 at 5].[10] Defendants urge that GHA constitutes a "person" under *Monell*, citing TEX. LOC. GOV'T CODE § 392.006 [Dkts. 22 at 7-9; 26 at 1-2].

GHA is the municipal housing authority ("MHA") for Gainesville, Texas.  Under the Texas Local Government Code, "[a] housing authority is created in each municipality in the state." TEX. LOC. GOV'T CODE § 392.011(a); *see also* § 392.006.  "Unlike a department created by municipal law, an MHA created under chapter 392 is a distinct 'unit of government' for all purposes and 'a public body corporate and politic.'"  Tex. Att'y Gen. Op. KP-0006, 2015 WL 1003697, at *1 (2015) (citing TEX. LOC. GOV'T CODE §§ 392.006, 392.011(b)).  "Texas case law and opinions of

---

[9] More specifically, "in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities could be held liable for monetary, declaratory, and injunctive relief in § 1983 proceedings so long as the action that is alleged to be unconstitutional implements or executes an official municipal policy." *Granger v. Jefferson Cnty.*, 1:13-CV-247, 2013 WL 2636861, at *2 (E.D. Tex. June 11, 2013).  And "[a]lthough § 1983 facially applies only to 'person[s],' local government units can be sued under § 1983 as well." *Chacon*, 2000 WL 33348200, at *3 (citing *Monell*, 436 U.S. at 690).  "Suit may properly be brought against 'those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *Daves v. Dallas Cnty.*, 22 F.4th 522, 532 (5th Cir. 2022) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

[10] Plaintiff refers to and directs the Court to consider the GHA's website but points to no specific information related to GHA's status as a municipality or other government unit.  Plaintiff states only that,

> By its own admission, on its website, GHA is not a municipality. As such, Defendant may not claim Municipal or Governmental immunity to which it is not entitled as a Housing Authority created to administer the Section 8 and other housing Programs for HUD.

[Dkt. 24 at 5].

this office have concluded that a municipal housing authority is a division of the city that created it." Tex. Att'y Gen. Op. DM-426, 1996 WL 737214, at *1 (1996). GHA, therefore, is a "person" subject to suit under § 1983. *See James v. Dallas Hous. Auth.*, 526 F. App'x 388, 394 (5th Cir. 2013) (per curiam) (citing *Monell*, 436 U.S. at 690) ("The [Dallas Housing Authority], as a municipality, is a 'person' subject to suit under § 1983."); *Payne v. City of San Antonio*, No. SA-19-CV-00407-FB, 2019 WL 7037943, at *4 (W.D. Tex. Dec. 20, 2019) (citing TEX. LOC. GOV'T CODE § 392.006) ("By statute, a housing authority such as SAHA is a governmental entity of the State of Texas."); *Flores v. Edinburg Hous. Auth.*, No. CV M-05-67, 2006 WL 8447691, at *3 (S.D. Tex. Mar. 31, 2006) (citing *Ritter v. Cecil Cnty. Off. of Hous. Cmty. Dev.*, 33 F.3d 323, 327 (4th Cir. 1994)) ("Defendant Housing Authority of the City of Edinburg is a local entity . . . serving as a local public housing agency in Hidalgo County, Texas, for the administration of a federally funded housing program.").

To "establish municipal liability (a '*Monell* claim') under § 1983, 'a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy.'" *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir.) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010)), *cert. denied*, 142 S. Ct. 564 (2021). Stated differently, to withstand dismissal of a § 1983 municipal liability claim, "[a] plaintiff must identify '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom).'" *Id.* (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up)). "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). It may also be evidenced by "a policy statement formally announced by an official policymaker or a 'persistent

widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James*, 526 F. App'x at 394 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Defendants argue Plaintiff's claims must be dismissed because she has not "come forward with more than mere allegations" that GHA has a policy, practice, or custom that gives rise to the violations she alleges, or that any such policy is the "moving force" behind Plaintiff's injury [Dkt. 22 at 7-9]. Plaintiff responds that "Defendant Henderson [] had the final authority to constitute policy within his agency Defendant GHA. This is evidenced by Defendant Henderson acting as hearing officer and issuing a decision during Plaintiffs initial termination. This is the final decision and Plaintiff has no other options to appeal and get her voucher subsidy back" [Dkt. 24 at 5]. Plaintiff's live pleading further asserts "GHA has the authority to overturn a decision by the hearing officer at the conclusion of these hearings and is the final decision-maker for the purposes of the hearing" [Dkt. 1 at 3], and "[i]n his capacity as Executive Director, [Henderson's] actions represent official policy. Further, he is also the hearing officer who confirmed the agency decision to terminate Plaintiffs [sic] housing subsidy" who "has the capacity to overturn the agency decision to terminate Plaintiff's subsidy" [Dkt. 1 at 3]. Plaintiff further pleads GHA and Henderson "are in charge of the Section 8 Program, [and] as such set policy or custom for the Program where GHA operates in Cooke County" [Dkt. 1 at 14]. Plaintiff's § 1983 claims, as pleaded, thus rest upon GHA's decision to terminate Plaintiff's voucher and Henderson's actions as Executive Director upholding the termination decision after hearing [Dkt. 1 at 3].[11]

---

[11] In her response, Plaintiff further urges this argument that, as a result of Defendants' actions "sanctioned from the Executive Director," Plaintiff's property rights "have been stripped without proper due process of the law. This is sufficient to demonstrate custom and or policy which deprives Plaintiff of a Constitutional right" [Dkt. 24 at 5].

With regard to Henderson's decision to uphold termination, Plaintiff does not plead any factual allegations beyond bare conclusions that Henderson's actions in this instance constitute an "official policy" of GHA or rise to the level of a widespread custom or practice of GHA.  *See Payne*, 2019 WL 7037943, at *4 (citation omitted) (dismissing § 1983 claims because "Plaintiffs do no more than recite the law on municipal liability and allege generally that there was a policy or custom underlying the constitutional violation. This Court need not credit these conclusory allegations.").  As a municipal entity, GHA is "not liable under § 1983 on the theory of respondeat superior."  *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Monell*, 436 U.S. at 694).  "Isolated unconstitutional actions by municipal employees typically do not trigger liability."  *Ream v. City of Heath*, No. 3:14-CV-4338-B, 2015 WL 4393295, at *2 (N.D. Tex. July 16, 2015) (citing *McKee v. City of Rockwall*, 877 F.2d 409, 415-16, (5th Cir. 1989)); *see Hutcheson*, 994 F.3d at 482 (quoting *Peterson*, 588 F.3d at 847) (same); *Williams v. Houston Hous. Auth.*, No. CV 4:09-2153, 2010 WL 11678714, at *3 (S.D. Tex. May 24, 2010) (citing *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)) ("The mere fact that an alleged harm arose from the conduct of an employee of a municipality is, therefore, not sufficient for liability to attach.").  And, while "'[a] single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity," *Ream*, 2015 WL 4393295, at *2 (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)), here, Plaintiff's threadbare assertion that Henderson is the Executive Director is insufficient to state that he is a policymaker.  *See Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 528 (5th Cir. 2006) ("even if Lamberg operated as Executive Director, she cannot be considered a final policymaking authority simply because she held that position."); *Ream*, 2015 WL 4393295, at *3 (citing *Iqbal*, 556 U.S. at 678) ("However, none of these conclusory allegations are supported by facts that would establish that Garrett is a final

policymaker with respect to the City's policies and customs . . . which she alleges caused the violation of her constitutional rights."); *see also Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 246 (5th Cir. 2021) (per curiam) (quoting *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008)) (dismissing a *Monell* claim because"[t]here is a fundamental difference between decision makers and policymakers. 'Discretion to exercise a particular function does not necessarily entail final policymaking authority over that function.'").

As Plaintiff's live pleading seemingly recognizes, "[t]he powers of an MHA are vested in its commissioners." Tex. Att'y Gen. Op. KP-0006, 2015 WL 1003697, at *1 (citing TEX. LOC. GOV'T CODE § 392.051(b)); Tex. Att'y Gen. Op. KP-0223, 2018 WL 6174626, at *1 (2018) (citing TEX. LOC. GOV'T CODE §§ 392.031(a), 392.051(b)) ("The powers of a municipal housing authority are vested in its commissioners, who are appointed by the mayor or another presiding officer of the municipal governing body."); *see* [Dkt. 1 at 10] (quoting 24 C.F.R. § 982.54(a)) ("The administrative plan and any revisions of the plan must be formally adopted by the [ ] Board of Commissioners or other authorized [ ] officials"). The position of Executive Director of a municipal housing authority has no inherent policymaking function, as explained by the Texas Attorney General:

> Chapter 392 does not specify any of the duties or powers an executive director, or any other employees of the authority, shall have. Rather, the code requires the authority to determine the qualifications, duties, and compensation of all persons it employs. The authority may delegate to any of its employees those powers and duties it considers proper to delegate.

> Thus, while the executive director of an authority may perform functions the authority has chosen to delegate to him or her, the code itself confers no duties or functions on the executive director.

Tex. Att'y Gen. Op. DM-163, 1992 WL 525271, at *1-2 (1992) (internal citations omitted) (first citing TEX. LOC. GOV'T CODE §§ 392.038, 392.051(c); then citing Attorney General Opinion JM–

91, at 2 (1983)); s*ee Chacon v. Hous. Auth. of City of El Paso*, No. EP-99-CA-410-DB, 2000 WL 33348200, at *4 (W.D. Tex. Oct. 31, 2000) ("the Housing Authority shows conclusively that its policymaking authority is vested in a 'board' of commissioners").  Plaintiff does not plead any delegation of policymaking authority by the Board of Commissioners to Henderson and, Plaintiff's allegations that Henderson failed to reverse GHA's termination decision after hearing simply does not rise to the level of a policymaker enacting an official policy.  *See James*, 526 F. App'x at 395 ("With regard to Reynolds' decision to uphold the DHA decision, Reynolds is not a policymaker, and the evidence does not show any official or widespread policy with respect to Reynolds' decision."); *Thomas*, 2015 WL 2192785, at *8 ("Plaintiff has not alleged that a policy or custom of the DHA has harmed him. Instead, he alleges that the DHA is liable because an employee acted 'against' the DHA's policies. Plaintiff therefore cannot state a claim against the DHA, and all claims against this defendant also should be summarily dismissed.").[12]  In sum, Plaintiff fails to allege any plausible facts that Henderson's actions constitute an official policy or custom of GHA by way of authority delegated to him by the Board of Commissioners.

With regard to GHA's initial decision to terminate, in reliance on *James*, Defendants further argue "Plaintiff points only to GHA's application of 24 C.F.R. § 982.553(c) as the moving force behind GHA's alleged violation of her rights." [Dkt. 22 at 12-13].  The Fifth Circuit in *James* found the requirements for municipal liability had not been met in a case where the plaintiff's housing assistance was terminated after allegations of criminal activity.  The *James* court stated that "[w]ith regard to the DHA's initial decision to terminate his housing assistance, James points only to DHA's application of 24 C.F.R. § 982.553(c) as the moving force behind DHA's alleged

---

[12] Plaintiff further posits Henderson in his role as Executive Director must constitute a policymaker because his hearing decision was final.  But, as the Fifth Circuit has noted, a person is not a policymaker when he makes a decision simply because that decision is unreviewable, if in fact, Henderson's decision was such.  *See Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 382, n.17 (5th Cir. 2007).

violation of his rights. However, DHA cannot be held liable for a policy that is not attributable to it; that regulation was promulgated by the federal government and does not give rise to DHA's liability as a municipality under § 1983." *James*, 526 F. App'x at 395. Applying the Fifth Circuit's rationale here, Plaintiff has failed to state any § 1983 claims and such claims should be dismissed. *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 845 (S.D. Tex. 2011). The Court now addresses Defendants' remaining arguments for dismissal for failure to state a claim.[13]

### *Failure to State a Claim*

#### *No Private Right of Action Under Section 8*

Plaintiff challenges the validity of the decision to terminate her Section 8 voucher, citing both 42 U.S.C. §§ 1437f, 1437d(k) and 24 C.F.R. pt. 982. Defendants urge, however, that there is no implied private right of action under Section 8 [Dkt. 22 at 2]. Other courts under similar circumstances have reviewed this argument and agreed with Defendants. Consider in *Flores v. Edinburg Housing Authority*, where plaintiffs brought an action stemming from the termination of their Section 8 housing vouchers, arguing the termination based upon allegations of involvement in criminal activity was wrongful:

> the United States Housing Act of 1937, absent rare exceptions, does not permit an implied private right of action under Section 8 programs. In determining whether a Plaintiff has an implied right of action under § 1983, the Fifth Circuit has continued to reiterate a determination based on a *Blessing* analysis. Specifically, a[n] implied private right of action may be found where: (1) Congress intended that the provision in question benefit the private plaintiff; (2) the right assertedly protected by the statute must not be so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the states, with the asserted right couched in mandatory rather than precatory terms.
>
> It is clear that it was Congress' intent to provide meaningful housing assistance to individual families participating in the voucher system. It is also clear that Congress

---

[13] Plaintiff expressly disclaims the assertion of any tort claims [Dkt. 24 at 6]; the Court thus confines its consideration of the Parties' remaining arguments to whether a private cause of action for Section 8 program violations exists or whether Plaintiff has stated a claim under the ADA or FHA for failure-to-accommodate.

> intended to provide families with certain protections prior to the termination. *See* 42 U.S.C. 1437f(o). However, it is less than clear that Congress intended to provide voucher participants judicial review when a PHA terminates a participant's voucher for engaging in criminal activity that may harm the health, safety or welfare of the premises, without actual prove that it in fact did on this particular occasion. Given the fact that Congress has delegated significant discretion to the local PHA's in these matters and that a separate panel reviewed the PHA's decision to terminate, the Court holds that Plaintiffs do not [] have [an] implied right to sue for review. To the extent that Plaintiffs' § 1983 claims are directed at Defendant on the basis of its administration of the Section 8 program under the United States Housing Act of 1937 and its implementing regulations, they must be dismissed.

2006 WL 8447691, at *2. Contemporaneous with *Flores*, the Fifth Circuit and other courts have concluded that a Section 8 tenant does not have a private remedy or right of action under the Section 8 program. *See Banks v. Dallas Hous. Auth.*, 271 F.3d 605, 610 (5th Cir. 2001) (no private cause of action exists under Section 8 housing program); *Rodgers v. Garland Hous. Agency*, No. CIV. 3:01-CV-0477-H, 2001 WL 1029516, at *4 (N.D. Tex. Aug. 21, 2001) (citing *Blessing v. Freestone*, 520 U.S. 329 (1997); *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418 (1987)); *Modica v. Reyna*, No. 1:08-CV-871, 2009 WL 2827975, at *9 (E.D. Tex. Sept. 2, 2009) (citation omitted) (collecting cases) ("The court considered whether the plaintiffs had a private right of action against the local public housing agency that administered the Section 8 voucher program for HUD. The court concluded that a Section 8 tenant may not sue a public housing agency in federal court. In support, the *Rodgers* court cites cases from the United States Courts of Appeals for the District of Columbia Circuit and the Fourth and Eighth Circuits, all holding that the United States Housing Act of 1937 does not permit an implied private right of action under Section 8 programs."); *Williams v. Harris Cnty. Hous. Auth.*, No. CV 14-3570, 2016 WL 8730315, at *12 (S.D. Tex. Sept. 2, 2016) (rejecting a challenge to a Section 8 termination decision because there is no "implied right of action under Section 1437f, [and] these claims by Plaintiff should be dismissed."), *report and recommendation adopted*, No. CV H-14-3570, 2016

WL 5661705 (S.D. Tex. Sept. 30, 2016); *see also Brown v. Harris Cnty. Hous. Auth.*, No. CV H-15-2847, 2016 WL 5123405, at *5 (S.D. Tex. Aug. 31, 2016) (dismissing claims challenging a termination decision under 24 C.F.R. § 982.555 because "the Plaintiff cannot assert a private right of action for the violation of any HUD regulation."), *report and recommendation adopted*, No. CV H-15-2847, 2016 WL 5108376 (S.D. Tex. Sept. 20, 2016).  This Court declines to create a private cause of action for violations of 42 U.S.C. § 1437d(k) and its implementing regulations.[14]

### *Failure to State a Claim for Failure to Provide Reasonable Accommodation*

Plaintiff further asserts claims under the ADA and the FHA for failure to provide a reasonable accommodation on the basis of a disability, which she alleges caused her criminal conviction that resulted in termination of her Section 8 voucher [Dkt. 1 at 18].  Plaintiff pleads she requested the "housing authority rescind the termination of her voucher as an accommodation to her disability" [Dkt. 1 at 2].  She does not further explain the nature of her alleged disability, other than broadly referencing her mental health during the time of her alleged criminal conduct.  Defendants deny that a "voucher prohibition regarding convicted felons" is a violation of the FHA or the ADA [Dkt. 10 at 8].[15]

Under the FHA, it is unlawful to discriminate against a disabled individual by refusing "to make reasonable accommodations in rules, policies, practices, or services, when such

---

[14] Even if § 1437d(k) were to provide a right enforceable by § 1983, the Court would still find Plaintiff has failed to allege facts sufficient to show municipal liability for any such violations on the part of GHA.  Stated differently, even if violations of § 1437d(k) and HUD's implementing regulations could be actionable under or through § 1983, failure to allege facts showing the required elements of municipal liability, as set forth *supra*, is fatal to any claim Plaintiff has against GHA.  *See James*, 526 F. App'x at 395 ("With regard to the DHA's initial decision to terminate his housing assistance, James points only to DHA's application of 24 C.F.R. § 982.553(c) as the moving force behind DHA's alleged violation of his rights. . . . that regulation was promulgated by the federal government and does not give rise to DHA's liability as a municipality under § 1983.").

[15] More specifically, they urge that "Plaintiff's Title 8 housing voucher was terminated because Plaintiff received a conviction for a third degree felony. That termination was in substantial compliance with procedures and statutes related to such termination. Defendants were under no obligation to grant a 'reasonable accommodation'" [Dkt. 10 at 2-3].

accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604. "Both 'the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals.'" *Jackson v. City of Grand Prairie*, No. 3:19-CV-02940-M, 2020 WL 1864641, at *1 (N.D. Tex. Apr. 13, 2020) (quoting *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) [s]he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 2022 WL 2154726, at *12 (5th Cir. 2022) (quoting *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (quotation omitted)). In Section 8 cases, courts often consider claims for disability discrimination under the ADA and FHA together because their reasonable accommodation provisions are treated the same. *Taylor v. Hartley*, 488 F. Supp. 3d 517, 544 (S.D. Tex. 2020) (quoting *Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 907 (M.D. La. 2017)) ("Because the FHA, ADA, and Rehabilitation Act offer similar protections, 'analysis of a reasonable accommodation claim under the three statutes is treated the same.'"); *Brown v. Harris Cnty. Hous. Auth.*, No. CV H-15-2847, 2018 WL 3080880, at *8 (S.D. Tex. Jan. 11, 2018) (same), *report and recommendation adopted*, No. CV H-15-2847, 2018 WL 1250445 (S.D. Tex. Mar. 12, 2018).[16]

      Plaintiff does not plead that she has any covered disability under the ADA or FHA, stating only that her criminal conviction is related to mental health issues. Even construing Plaintiff's

---

[16] As one Texas federal court explained:

> Courts analyze these claims together, finding that "[b]ecause the relevant portions of the [Fair Housing Act], [the] ADA, and ... the Rehabilitation Act offer the same guarantee that a covered entity ... must provide reasonable accommodations ... to people with disabilities, analysis of a reasonable accommodation claim under the three statutes is treated the same."

*Brown*, 2018 WL 3080880, at *8 (quoting *Browning*, 266 F. Supp. 3d at 907 (internal quotation marks omitted) (alterations in original)).

pleadings liberally, this is not sufficient to meet her initial burden of alleging a qualifying disability. *See Holman v. Fairchild*, No. 4:17-CV-1745, 2021 WL 7707819, at *6 (S.D. Tex. Aug. 31, 2021) (quoting *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017)) (cleaned up) ("On a failure to accommodate claim, 'the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation'"); *Barfield v. Plano Hous. Auth.*, No. 4-11-CV-00206, 2012 WL 3135892, at *5 (E.D. Tex. July 6, 2012) (footnote omitted) ("Plaintiff's complaint does not state what his disability is or how Defendants failed to accommodate it. The complaint itself only references alleged criminal conduct, and criminal conduct is not a disability."), *report and recommendation adopted*, No. 4-11-CV-00206, 2012 WL 3135674 (E.D. Tex. Aug. 1, 2012). Nor does she plead that requesting her voucher termination be reversed constitutes a request for a reasonable accommodation under the ADA or FHA for any disability or that asking for reversal was a "direct" and "specific" request for a disability accommodation. *See Smith*, 956 F.3d at 317 (citing *Windham*, 875 F.3d at 237) ("Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms."). Plaintiff has failed to plead facts for each prima facie element of a claim for failure to make reasonable accommodations; she has thus failed to state a claim under either the ADA or FHA.[17] *See Payne*, 2019 WL 7037943, at *8 (citing *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 457 (5th Cir. 2018)) (citation omitted) ("Plaintiffs must allege a qualifying disability; that Plaintiffs are being denied the benefits of

---

[17] Plaintiff's claim that GHA "was aware Plaintiff is disabled" because her "sole source of income is Social Security benefits" is not enough to show knowledge of a qualified disability [Dkt. 1 at 2]. *See Barfield*, 2012 WL 3135892, at *5 (analyzing the factual allegations required to plead the elements of a failure to accommodate claim) ("that Plaintiff and his daughters received SSI disability payments . . . are not enough to create a genuine issue of material fact that Defendants failed to accommodate those disabilities.").

services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by Defendants; and that the discrimination is due to the disability. Plaintiffs do not describe the disability at issue"). Plaintiff's claims should therefore be dismissed. *See A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2012 WL 1877740, at *8 (N.D. Ind. May 18, 2012) (dismissing failure-to-accommodate claim where the plaintiff's Section 8 voucher was terminated pursuant to HUD regulations permitting termination due to criminal conduct), *aff'd*, 498 F. App'x 620 (7th Cir. 2012).

## CONCLUSION AND RECOMMENDATION

The Court recommends that Defendants Gainesville Housing Authority and J.L. Henderson's Motion to Dismiss [Dkt. 22] be **GRANTED**, and Plaintiff's claims against Defendants be **DISMISSED** as set forth herein.[18]

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

---

[18] Courts have dismissed with prejudice § 1983 claims against a municipality that fail to satisfy the *Monell* elements. *See, e.g.*, *Aubrey v. D Mag. Partners, L.P.*, No. 3:19-CV-0056-B, 2020 WL 1469955, at *16 (N.D. Tex. Mar. 26, 2020) (dismissing § 1983 claims against the City of Dallas); *Max-George v. Houston Police Dep't*, No. H-17-2264, 2020 WL 6322283, at *4 (S.D. Tex. Oct. 28, 2020).

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 14th day of July, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE